**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD RICHARDSON, | ) | |
| | ) | Case No. 12-cv-9184 |
| Richardson, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | Magistrate Judge Sheila Finnegan |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Harold Richardson ("Richardson") brought this suit against the City of Chicago

("City"), the Chicago Police Department ("CPD"), several CPD Detectives (the "Officer

Defendants"), Cook County Assistant State's Attorneys ("ASAs") Fabio Valentini and Terrence

Johnson (the "ASA Defendants"), and Cook County ("County") (collectively, "Defendants") for

injuries arising out of his alleged wrongful conviction for a murder he did not commit. The City,

CPD, and the Officer Defendants have entered into a settlement agreement with Richardson and

been dismissed from the case. See [464]. Currently before the Court is the ASA Defendants'

and Cook County's motion for summary judgment [446]. For the reasons explained below, the

motion [446] is granted in part and denied in part. Summary judgment is entered in favor of

ASA Valentini on Richardson's Section 1983 failure to intervene claim. Summary judgment is

denied as to all other claims against the ASA Defendants and the County.

**I.      Background**

The following facts are taken from the Parties' Local Rule 56.1 statements and are

undisputed except where a dispute is noted. See [448] (ASA Defendants' Statement); [478]

(Richardson's Response); [466] (Richardson's Additional Facts); [484] (ASA Defendants' Response to Richardson's Additional Facts).

Richardson's lawsuit is brought pursuant to 42 U.S.C. § 1983 to redress alleged violations of his rights secured by the United States Constitution. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b), as the events giving rise to the claims asserted in Richardson's governing First Amended Complaint [340] occurred in this judicial district and the City is a municipal corporation located here.

Richardson is one of four plaintiffs who originally filed lawsuits on November 15, 2012. Each alleged that he was wrongful convicted of the 1994 rape and murder of Nina Glover ("Glover"). The other plaintiffs are Michael Saunders ("Saunders"), Vincent Thames ("Thames"), and Terrill Swift ("Swift"). At the time relevant here (March 1995), Fabio Valentini ("Valentini") and Terence Johnson ("Johnson") were ASAs in the Felony Review unit of the Cook County State's Attorney's Office. The County is a governmental entity within the State of Illinois.

Richardson was detained and arrested on March 9, 1995, while walking along the street near Thames' house in Chicago. Richardson testified at his deposition that three CPD officers, whose names he does not know, arrested him. Richardson testified that one of the officers told him, "we got you in front of a murder scene" and that he was placed in handcuffs, put in a police car, and transported to the police station at 51st and Wentworth. [448-5] at 130. According to Richardson, one of the officer's told him that they should take him "up under the viaduct *** and kill [him]." Id. at 164. Richardson testified that when they reached the police station, he was placed in a room that contained a gun in an open drawer and Richardson felt threatened. CPD

officers then drove Richardson around for 15 to 20 minutes to look for Saunders, before returning to the police station.

Richardson testified that, once they were back at the police station, CPD officers instructed him that if he told the state's attorney the following story, then he should be able to go: He had gotten Glover's attention, put his arm around her neck, and walked her to Thames' house. Once there, Richardson, Saunders, Thames and Swift all had sex with Glover. Saunders hit her on the head with a shovel, and Richardson strangled her. Thames got a sheet to wrap the body, while a fifth man, Jerry Fincher, acted as security. They moved the body to another location to hide it.

Richardson testified that, after the CPD officers told him what to tell the state's attorney, his parents were called. They eventually arrived at the station. According to Richardson, Valentini then came and spoke with him. Richardson testified that he told Valentini the story that the police asked him to repeat. See [448-5] at 167-68. Richardson testified that Valentini was "writing stuff down" as he talked and "asked [Richardson] if [he] wanted to sign" the written statement. *Id*. at 168. Richardson testified that he "pushed it away from [him] and told the State's Attorney I'm not signing this; I only said what the police told me to say." *Id*. Richardson repeated that he "told the state's attorney that" and "pushed [the statement] away from [him]." *Id*. at 169. According to Richardson, Valentini said "nothing" in response, but read Richardson his *Miranda* rights and then left the room. *Id*. Richardson testified that he only talked to one ASA while he was at the police station and that he never talked to Johnson or gave a confession to Johnson.

Saunders and Thames signed written statements confessing to Glover's murder, and Swift signed a court-reported statement confessing to the murder. All three implicated Richardson as a

3

participant in the crime. Like Richardson, Saunders, Thames, and Swift contend that CPD officers threatened them and told them what to say in their confessions. The details surrounding these other plaintiffs' confessions are not otherwise material to the present motion for summary judgment.

Richardson's criminal attorney moved to suppress his confession. Johnson testified at the September 16, 1997 suppression hearing. Johnson testified that he had a fifteen-minute conversation with Richardson on March 9, 1995, at which Richardson confessed that he raped and choked Glover. Richardson was present at the hearing when Johnson gave this testimony. Richardson also testified at the hearing. Richardson testified that he had never seen Johnson before that day and that he did not give a statement to Johnson on March 9, 1995. At his deposition in this case, Richardson stated that he thought Johnson had been "lying" when he testified at the suppression hearing. [448-5] at 167. Richardson also testified that, to his knowledge, Johnson had nothing to do with the confession that he gave regarding Glover.

Richardson stood trial for the rape and murder of Nina Glover in November 1997. Valentini testified at the trial that on March 9, 1995, Richardson gave him an oral statement in which he admitted to participating in the rape and murder of Nina Glover. Valentini testified that he told Richardson that he could document his statement in writing or through use of a court reporter, but that Richardson's father, who was in the room at the time, shook his head "no" and Richardson then said "no." [478] at 9. At the conclusion of the bench trial, Richardson was found guilty. The trial judge stated that he believed Richardson's oral confession and "'t]hat's really all I need" to find Richardson guilty. [484] at 9. Saunders, Thames, and Swift were also convicted based, at least in substantial part, on their allegedly false and coerced confessions.

During post-conviction proceedings, vaginal swabs contained in the rape kit taken from Glover's body were tested and found to contain DNA that was consistent with the DNA of another man, Johnny Douglas. When Richardson received these DNA results, he filed a petition to have his conviction vacated. Richardson's conviction was vacated on November 16, 2011. On January 17, 2012, the state dismissed charges against him and, on September 14, 2012, he was granted a certificate of innocence. Saunders, Thames, and Swift were also successful in having their convictions vacated based on this new DNA evidence.

In March 2012, Johnson was interviewed by an FBI agent, Jeffrey Moore ("Moore"), and two attorneys from the Department of Justice ("DOJ"). The day after the interview, Moore compiled a report (the "302 Report") based on his notes and recollections. See [465-7]. According to the 302 Report, although Johnson "never heard any of the detectives tell one of the subjects 'Say what we want you to say and you can go home,'" "at some point during all the interviews the subjects were told that the first one to talk can become a witness and that witnesses go home." *Id*. at 4.

According to the 302 Report, Johnson and Valentini both felt that CPD detectives coached and fed the subjects information during their statements to the ASAs, at times correcting their responses to questions. Valentini told Johnson that two of the subjects from whom he took statements refused to sign the statements; one subject got cold feet and recanted, while the other subject's parents were in the room and he did not want his parents to know what he had done. The report states that Johnson worried that the statements were fabricated because they were too consistent and CPD officers fed the subjects information during their statements.

The 302 Report further states that prior to the motion to suppress hearing, Detectives James Cassidy ("Cassidy") and Richard Paladino ("Paladino") circulated a document/timeline

detailing what the detectives and ASAs should say when questioned about the Glover investigation, so they all would provide consistent statements. During breaks, the detectives told Johnson and Valentini what the defense attorneys were asking and discussed what their responses should be. According to the 302 Report, Johnson thought the suppression hearing was "[r]igged." [465-7] at 6. "It bothered Johnson that they were all supposed to agree to the way things happened." *Id*. According to the report, "Valentini told Johnson he would use the time line and that it would help them remember," but "Johnson told Valentini he would say he didn't remember if there was something in the time line he did not agree with." *Id*. "Johnson never told anyone about the incident or document." *Id*.

Richardson filed his original complaint [1] on November 15, 2012. The complaint included eleven claims against the City and the Officer Defendants: Section 1983 claims for violations of Due Process and the Fifth Amendment, failure to intervene, conspiracy, supervisory liability, and *Monell* liability; and state law claims for malicious prosecution, intentional infliction of emotional distress ("IIED"), civil conspiracy, respondeat superior, and indemnification. Richardson was the only one of the four plaintiffs who did not also bring claims against the County and one or more ASAs in November 2012. In particular, Swift named Johnson and the County as defendants, while Saunders named Johnson, Valentini, and the County as defendants. Saunders' complaint included the same eleven claims as Richardson's original complaint.

The Saunders complaint, filed on November 15, 2012 (the same day Richardson filed his original complaint), alleged with respect to Richardson that:

> Johnson was initially involved in Harold's interrogation, before passing the case off to Valentini. Although Harold never gave a statement to Johnson, Johnson later falsely claimed that Harold had confessed to him. Harold eventually succumbed to Defendants' unlawful pressure by giving an oral admission to

Valentini, but, knowing it was false, refused to allow the statement to be reduced to writing. Valentini, Johnson and the other Defendant Officers were all aware that Harold's confession was the product of coercion and was merely a fabricated version of events that had been fed to him by Defendants, including Johnson and Valentini.

On March 11, 2013, Richardson, Thames, and Saunders' cases were consolidated for purposes of discovery and other issues. Discovery against the ASA Defendants and the County was stayed pending resolution of Valentini's motion to dismiss. In his answer to the Thames, Saunders, and Swift complaints (filed in February and April 2014), Johnson denied any wrongdoing. See generally [465-10].

Johnson was deposed in December 2014. According to Richardson, ASA "Johnson falsely disclaimed any knowledge of misconduct in obtaining Richardson's confession and disavowed essentially every incriminating detail he provided in March of 2012, as reflected in the … 302 [Report]." [484] at 21. Among other things, Johnson testified that he never observed a suspect be offered false leniency, and that if he thought the plaintiffs were coerced in any way, would have documented it. See [465] at 8. The ASA Defendants deny that any of Johnson's deposition answers were untruthful. In response to an interrogatory from Swift seeking the identity of "every Person with whom you have ever communicated about the allegations in Plaintiffs' Complaint in these actions," Johnson did not mention his interview with the FBI. [484] at 22. The ASA Defendants assert that they interpreted this interrogatory as being limited to persons with whom Johnson spoke after the lawsuits were filed, and therefore Johnson's response was truthful. See *id*. at 23.

Valentini was also deposed in December 2014. Richardson contends that "Valentini did not admit his involvement in conspiring with the Defendant Officers or in failing to intervene to stop the fabrication of their statements." [484] at 25. The ASA Defendants, without going into

detail about the contents of Valentini's testimony, deny that Valentini testified untruthfully or improperly in his deposition.

Richardson sent a subpoena to the FBI for documents related to his Due Process claim against the Defendant Officers, which included a request for all documents related to the Glover rape and homicide investigation. On May 9, 2016, the FBI produced responsive documents, including the 302 Report. On May 26, 2016, Richardson, Saunders and Thames filed a joint motion for leave to conduct additional limited discovery, including to re-depose Johnson, Valentini and certain police officers, and to depose Moore.

On July 15, 2016, Richardson filed a motion for leave to file an amended complaint, in which he sought leave to add Valentini, Johnson, and the County as defendants. See [238]. On October 26, 2016, Richardson, Saunders, and Thames were granted leave to re-depose Johnson and depose Agent Moore. Johnson testified at his subsequent deposition that he had believed that his March 12, 2012 conversation with the FBI was confidential. Johnson testified that he did not know that the 302 Report existed until it was produced by the FBI in this litigation and he received a call from his attorney. Johnson acknowledged that he had testified as a witness before the grand jury and had a conversation with U.S. Attorney Betsy Biffl immediately before testifying.

On January 4, 2017, the Court granted Richardson's motion to add Valentini, Johnson, and the County as Defendants. See [335]. The Court rejected the ASA Defendants' and County's argument that amendment should be denied because Richardson's claims were barred by the statute of limitations. The Court explained that "[w]hile further factual development may very well provide evidence that Richardson 'discovered' the ASAs' involvement before receiving the [302] Report …, at this stage the Court is limited to evaluating the face of

Richardson's proposed amended complaint," and "the Court cannot say based on the face of the proposed amended complaint that Richardson knew or should have known, prior to receipt of the [302] Report, that Johnson and/or Valentini were involved in the Officer Defendants' alleged scheme to obtain a false confession from Richardson, which resulted in his wrongful conviction." [335] at 12.

On January 12, 2017, Richardson filed his First Amended Complaint [340]. The First Amended Complaint contains the same eleven counts contained in Richardson's original complaint and in Saunders' complaint. The First Amended Complaint alleges in part that "Defendant Johnson was initially involved in securing the false and fabricated statements from the boys, including Richardson, before passing the task of attempting [to] secure a statement from Richardson to Defendant Valentini," but "[n]evertheless, Johnson later falsely claimed that Richardson had confessed to him." [478] at 5. The First Amended Complaint also states: "In the presence of the Defendant Officers, Valentini attempted to get Richardson to agree to sign a handwritten statement. In so doing, when Richardson expressed reluctance, Valentini pressured him to go along with the version of events supplied by the Defendant Officers on the promise that he would go home. Defendant ASAs were aware that Richardson was being coerced and fed information, but nonetheless encouraged his confession and reinforced the false promise that he would be allowed to go home if he cooperated." *Id*. at 5-6.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion

by * * * citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (internal quotation marks and citation omitted).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

## B.     Statutes of Limitation, Accrual and Tolling

Richardson's Section 1983 claims are governed by Illinois' two-year statute of limitations for personal injury actions, but federal accrual rules apply to these claims. *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016).  Under the federal discovery rule, "[t]he statute of limitations [starts] running only when the plaintiff learns that he's been injured, and by whom." *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010).  Determining the accrual date of federal claims involves two steps.  First, the "'court must identify the injury.'" *CBS Outdoor, Inc. v. Village of Plainfield*, 959 F. Supp. 2d 1054, 1062 (N.D. Ill. 2013) (quoting *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)).  Second, the Court must "'determine the date on which the plaintiff could have sued for that injury.'" *Id*.  "That date should coincide with the date the plaintiff 'knows or should know' that her rights were violated." *Id*.  As part of this second step, the Court must consider when the plaintiff knew that a particular defendant was involved in causing his injury.  See *Norwood*, 602 F.3d at 837; see also *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 850 (7th Cir. 2007) ("a tort claim does not arise until there is an injury, or until the injury (and who caused it) is discovered or should have been discovered"); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) ('accrual occurs when the plaintiff discovers that 'he has been injured and who caused the injury'" (quoting *United States v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000)).

It is important to recognize that under the discovery rule, "'[i]t does not matter whether the plaintiff knows the injury is actionable—he need only know that he has been injured.'" *Kovacs v. United States*, 614 F.3d 666, 674 (7th Cir. 2010) (quoting *Fayoade v. Spratte*, 284 Fed. Appx. 345, 347, 2008 WL 2647092, at *2 (7th Cir. 2008)).  In other words, "[a] plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on

the discovery of the harm itself, not the discovery of the elements that make up a claim." *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674 (7th Cir. 2009); see also *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Tomlinson v. Goldman, Sachs & Co.*, 682 F. Supp. 2d 845, 846 (N.D. Ill. 2009).

Richardson's state law tort claims are subject to a one year statute of limitations. See 745 ILCS 10/8-101. Illinois recognizes the discovery rule, but its formulation is somewhat different than the federal discovery rule. Under Illinois law, "[a] cause of action accrues, and the limitations period begins to run, when the party seeking relief knows or reasonably should know of its injury and that it was wrongfully caused." *Underwood v. City of Chicago*, 84 N.E.3d 420, 433 (Ill. App. 2017). However, unlike under the federal rule, the plaintiff need not be able to identify *who* caused his or her injury before the statute of limitations commences. See *Guarantee Trust Life Ins. Co. v. Kribbs*, 68 N.E.3d 1046, 1054 (Ill. App. 2016) (explaining that Illinois courts have "repeatedly rejected" the proposition that under the discovery rule, "the identity of the party who caused [the plaintiff's] injury is a prerequisite to the commencement of the running of the statute of limitations"); *Wells v. Travis*, 672 N.E.2d 789, 793 (Ill. App. 1996) ("Knowledge that an injury has been 'wrongfully caused' does not mean knowledge of a specific defendant's negligent conduct."); see also *Peal v. Lee*, 933 N.E.2d 450, 461 (Ill. App. 2010) (discovery rule did not toll the one-year statute of limitations applicable to ice skating instructor's defamation claim against a manager for his former employer, where instructor knew that defamatory statements were being made about him at work at around the time they were allegedly made, and instructor had the burden to inquire further into who made the statements); *McCormick v. Uppuluri*, 621 N.E.2d 57, 61 (Ill. App. 1993) (rejecting the notion that the plaintiff's ignorance of a doctor's role in his injury tolled the running of the limitations period

where the doctor was identified in the plaintiff's medical records and "[a]ny reasonable discovery attempts should have included ascertaining [the doctor]'s involvement").

Even after a plaintiff "discovers" his injury, the running of the statute of limitations may be tolled under one or more equitable doctrines. There are "two fundamental doctrines of tolling, equitable tolling and equitable estoppel," with fraudulent concealment being a type of equitable estoppel. *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). The Seventh Circuit has explained the differences between the doctrines:

> Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim. In contrast, the doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations. Equitable estoppel in the limitations setting is sometimes (though confusingly ***) called fraudulent concealment but must not be confused with efforts by a defendant in a fraud case to conceal fraud. Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered or, as required by the discovery rule should have discovered, that the defendant injured him. It denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time.

*Shropshear*, 275 F.3d at 595.

In this case, Richardson asserts that the doctrines of equitable tolling, equitable estoppel, and fraudulent concealment all apply and save his federal and state law claims from the running of the applicable statutes of limitations. As to equitable tolling, Richardson's federal and state claims are both governed by Illinois' equitable tolling doctrine. See *Behavioral Institute of Indiana, LLC v. Hobart City of Common Council,* 406 F.3d 926, 932 (7th Cir. 2006) ("In § 1983 actions tolling of the statute of limitations is governed by the forum state's tolling rules, unless those rules are inconsistent with the purposes underlying 42 U.S.C. § 1983."); *Ind. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (state law regarding statutes of limitations and "any rules that are an integral part of the statute of limitations, such as tolling and

equitable estoppel" are used to analyze state law claims (quoting *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010))). Under Illinois law, "'[e]quitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum.'" *American Family Mut. Ins. Co. v. Plunkett*, 14 N.E.3d 676, 681 (Ill. App. 2014) (quoting *Clay v. Kuhl,* 727 N.E.2d 217, 223 (Ill. App. 2000)). "Extraordinary barriers" include, among other things, "'an irredeemable lack of information'" and "'situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence.'" *Id*. (quoting *Thede v. Kapsas,* 897 N.E.2d 345, 403 (Ill. App. 2008)). Unlike equitable estoppel, the defendant need not be at fault for equitable tolling to apply. *Id*. Instead, "[e]quitable tolling requires a showing of due diligence on the part of the plaintiff." *Hart v. Loan Kieu Le*, 995 N.E.2d 1002, 1004 (Ill. App. 2013). This is a "fact-specific inquiry, guided by reference to the hypothetical reasonable person." *Id*. (internal quotation marks and citation omitted).

"In contrast to equitable tolling, federal courts do not borrow [the] state equitable estoppel doctrine when they borrow a state statute of limitations; federal courts apply the federal doctrine of equitable estoppel." *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (7th Cir. 1992); see also *Cook v. City of Chicago*, 2014 WL 4493813, at *3 (N.D. Ill. Sept. 9, 2014) ("Federal equitable estoppel law controls [§ 1983 claims] even though defendants rely on an Illinois statute of limitations."). Thus, federal law on equitable estoppel applies to Richardson's Section 1983 claims. Under federal law, "[t]he traditional elements of equitable estoppel are: '(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting

estoppel.'" *Garlovsky v. United States*, 211 F. Supp. 3d 1084, 1090 (N.D. Ill. 2016) (quoting *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000)). "Any deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline can be the basis for a defense of equitable estoppel in federal limitations law." *Shropshear*, 275 F.3d at 597. These "active steps" may include, among other things, "hiding evidence." *Shanoff v. Illinois Dept. of Human Services*, 258 F.3d 696, 702 (7th Cir. 2001).

Illinois' equitable estoppel law applies to Richardson's state law claims. Similar to the federal doctrine, under Illinois law, "'[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person.'" *Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870, 872 (7th Cir. 2018) (quoting *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 541 (Ill. App. 2004)). "[E]quitable estoppel prevents a party from asserting the expiration of the statute of limitations as a defense when that party's improper conduct has induced the other into failing to file within the statutory period." *Liberty v. City of Chicago*, 860 F.3d 1017, 1020 (7th Cir. 2017) (internal quotation marks and citation omitted).

The Court applies Illinois' fraudulent concealment statute to both Richardson's Section 1983 and state law claims. See, e.g., *Smith*, 951 F.2d at 837 (applying Illinois fraudulent concealment statute to § 1981 and § 1983 claims); *Shropshear*, 275 F.3d at 597 (applying Illinois fraudulent concealment statute to § 1983 claims). Under Illinois' fraudulent concealment statute, "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215. "'The concealment contemplated by section 13–215

must consist of affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim.'" *Putzier v. Ace Hardware Corporation*, 50 F. Supp. 3d 964, 978 (N.D. Ill. 2014) (quoting *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1009 (Ill. 2007)). "A plaintiff seeking to use fraudulent concealment to toll a limitations period must establish that the defendant made misrepresentations or performed acts which it knew to be false, with the intent to deceive the plaintiff, and that the plaintiff detrimentally relied on those representations or acts." *Id*.

### III. Analysis

The ASA Defendants argue that Richardson's claims are barred by the applicable statutes of limitations because there is no dispute that he "knew that he had been injured and his constitutional rights had been violated when he originally filed [his] [c]omplaint in 2012" and no dispute that he "was aware of the [ASA] Defendants' involvement in his alleged wrongful conviction well before he filed his [c]omplaint in 2012." [447] at 6. In particular, the ASA Defendants argue, Richardson admits that he knew at the time of his suppression hearing in 1997 that Johnson was lying when he testified that Richardson had orally confessed to him. Richardson also admits that he knew at the time of his 1997 criminal trial that Valentini was lying about why Richardson refused to sign a written confession. In addition, the ASA Defendants argue, Saunders' complaint—which alleged that Valentini, Johnson and the Defendant Officers were all aware that Richardson's confession was the product of coercion and was merely a fabricated version of events—would have removed any doubt about Richardson's ability to name the ASA Defendants in his original complaint.

Richardson responds that the ASA Defendants' allegedly false in-court testimony is irrelevant because testifying falsely does not constitute an actionable constitutional violation, as

witnesses have absolute immunity from suits stemming from their testimony. According to Richardson, it is only the ASA Defendants' "conduct outside of court for which they can be liable and for which they can be sued" and he could not "circumvent absolute immunity by alleging a conspiracy to provide false testimony—more is required." [469-1] at 20 (citing *Rehberg v. Paulk*, 566 U.S. 356, 368-69 (2012)). Richardson could not have known "more," he contends, until he received the 302 Report from the FBI through third-party discovery. Richardson also argues, in the alternative, that the doctrines of equitable tolling, equitable estoppel, and fraudulent concealment apply to save his claims or, at a minimum, there are disputed questions of fact about whether the doctrines apply, which must be decided by a jury.

After considering the parties' arguments and the evidence in the record, the Court concludes that the discovery rule did not operate to extend the accrual of Richardson's claims to the date on which the 302 Report was produced, but nonetheless a jury must be allowed to decide—for all of the claims except the failure to intervene claim against Valentini—whether one or more equitable doctrines tolled the statute of limitations. Richardson's failure to intervene claim against Valentini is time-barred, and summary judgment will be entered in favor of Valentini on that claim only.

The Court begins with the discovery rule. Richardson's claims against the ASA Defendants accrued prior to the production of the 302 Report because Richardson knew by the time he was convicted that he had been injured, that his injury was wrongfully caused, and that the ASA Defendants were involved in some way in causing his injury. In particular, taking Richardson's version of the facts as true, Richardson told Valentini on the day he was arrested that he would not sign his confession because his oral confession was just a story made up by CPD officers. Richardson therefore knew that Valentini was lying when he testified at the

criminal trial that Richardson refused to sign the confession because his father told him not to. As to Johnson, Richardson asserts that he never confessed to Johnson and that he thought Johnson was lying when he testified at Richardson's suppression hearing that Richardson had orally confessed to him.

This evidence put Richardson on notice that both of the ASA Defendants' may have been involved in causing his injury, which was the use of his coerced oral confession to convict him for a murder he did not commit. For purposes of the discovery rule, knowledge that he was wrongfully injured and who caused the injury is what matters. *Kovacs*, 614 F.3d at 674; *Cancer Foundation*, 559 F.3d at 674; *Fayoade*, 284 Fed. Appx. at 347. It does not matter that Richardson could not have sued the ASA Defendants based solely on their allegedly false testimony during his criminal proceedings, which was protected by absolute immunity. See *Rehberg*, 566 U.S. at 367. Regardless of his ability to sue, the allegedly false testimony put Richardson on notice that the ASA Defendants were, in part, responsible for his injury and should have prompted him to investigate what other involvement the ASA Defendants may have had and whether that involvement was actionable.

Thus, Richardson's claims—which all presume that his conviction was obtained wrongfully based on a false, coerced confession—accrued not when he received the 302 Report, but when his conviction was vacated. See *Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 826 (N.D. Ill. 2015) (under *Heck v. Humphrey*, 512 U.S. 477 (1994), arrestee's Fifth Amendment self-incrimination claim accrued on date his conviction for murder was set aside, rather than date of conviction); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 742-43 (N.D. Ill. 2016) (§ 1983 due process claim brought by former inmate who was exonerated from murder conviction accrued on date inmate's conviction was thrown out); *Snodderly v. R.U.F.F. Drug Enforcement*

*Task Force*, 239 F.3d 892, 900 (7th Cir. 2001) (explaining that *Heck* "holds that claims resembling malicious prosecution do not accrue until the prosecution has terminated in the plaintiff's favor"). Richardson knew at this point that the ASA Defendants had some involvement in causing his injury and was responsible for investigating further to determine whether he had any cognizable legal claims against them. Richardson failed to file his claims against the ASA Defendants within two years of their accrual.

Nonetheless, one or more tolling doctrines may have extended the time for Plaintiff to file suit. Richardson argues that three equitable tolling doctrines apply under the facts of this case: equitable tolling, equitable estoppel, and fraudulent concealment. The Court first considers the application of these doctrines to Richardson's failure to intervene claim against Valentini, because the relevant facts are different for that claim than for Richardson's other claims against the ASA Defendants. The Court concludes that Richardson's failure to intervene claim against Valentini is not tolled under any theory, because the undisputed facts in the record, viewed in the light most favorable to Richardson, show that Richardson had enough information to include this claim in his original complaint. See *Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 931 (7th Cir. 2015) (equitable estoppel and equitable tolling end when plaintiff discovers or with due diligence should have discovered facts sufficient to realize he has a cognizable claim).

According to Richardson, he told Valentini on the day he was arrested that his oral confession was just a story that the CPD officers told him to tell. Yet, as Richardson would have known when he filed his original complaint, Valentini did not intervene to prevent the use of the oral confession against Richardson at his criminal trial. There is no apparent reason why Richardson could not have included this failure to intervene claim in his original complaint. This

claim is not based on Valentini's immune trial testimony, but rather on his failure to take any action when Richardson told him that the CPD officers fed him a story. Tellingly, Richardson does not point to anything in the 302 Report that was necessary to alert him to a failure to intervene claim against Valentini. Therefore, Valentini is entitled to summary judgment on the failure to intervene claim.

As to Richardson's remaining federal claims against the ASA Defendants, the Court concludes that a jury must be allowed to determine whether equitable tolling, equitable estoppel, or fraudulent concealment apply to save the claims from the running of the statute of limitations. For all of the claims, there are material factual disputes concerning whether Richardson knew or should have known that he could bring suit against the ASA Defendants; whether the ASA Defendants actively misled Richardson in a manner that prevented him from timely filing his claims; and whether, even if the ASA Defendants were blameless, Richardson was nonetheless prevented from asserting his rights in some extraordinary way. The evidence, viewed in the light most favorable to Richardson, is "sufficient to create a factual dispute concerning tolling of the statute of limitations, and thus prevents the Court from granting summary judgment." *Halperin v. Halperin*, 2012 WL 832786, at *4 (N.D. Ill. Mar. 8, 2012).

As Richardson correctly emphasizes, he could not have brought a conspiracy claim based solely on the ASA Defendants' allegedly false testimony during the criminal proceedings, because that testimony is protected by absolute immunity. See *Rehberg*, 566 U.S. at 367. The ASA Defendants argue that immunity is a "straw man" because Richardson's claims "are not based on the immunized testimony but rather on Valentini and Johnson's participation in [Richardson's] alleged false and involuntary confession." [473] at 7. However, Defendants do not point to any other information that Richardson had, prior to receiving the 302 Report, about

how Valentini and Johnson participated in obtaining and using the involuntary confession, or what Valentini and Johnson knew about the Officer Defendants' allegedly unconstitutional tactics. The Court cannot say as a matter of law that Valentini and Johnson's allegedly false testimony necessarily would have put Richardson on notice that Valentini and Johnson conspired with the Officer Defendants to obtain the false confession and use it against him to obtain a wrongful conviction. Even if it would be reasonable to presume the existence of a conspiracy based on the ASA Defendants' false testimony, this is not enough for purposes of summary judgment. The ASA Defendants are not entitled to summary judgment for "point[ing] to facts which *might* have caused [Richardson] to inquire, or *could* have led to evidence supporting his claim." *In re Copper Antitrust Litigation*, 436 F.3d 782, 792 (7th Cir. 2006) (quoting *Morton's Market, Inc. v. Gustafson's Dairy, Inc*., 198 F.3d 823, 832–33 (11th Cir. 1999) (emphasis in original)). "A defendant who does this has succeeded in demonstrating only that there is a jury question regarding the tolling of the statute of limitations," and "[t]o award summary judgment on such a showing is error." *Id*.; see also *Amerigas Propane, L.P. v. BP America, Inc*., 691 F. Supp. 2d 844, 859 n.13 (N.D. Ill. 2010).

The ASA Defendants assert that Saunders "specifically alleged that the Cook County Defendants conspired with the police in eliciting a false confession from Richardson," which "shows as a matter of law that Richardson had sufficient information to bring conspiracy claims against the Cook County Defendants if that is what he wanted to do." [473] at 9. However, Saunders' complaint is not evidence, and Saunders' attorneys' evaluation that they had a sufficient basis to sue the ASA Defendants is not binding on Richardson or his attorneys. Moreover, the complaint's allegations that touch on Richardson are not consistent with Richardson's subsequent deposition testimony about the ASA Defendants' involvement in his

coerced confession. Richardson testified that Johnson had nothing to do with his confession (indeed, he never met Johnson) and that Valentini was only brought in to the interrogation room to take down his confession and had no involvement in pressuring him to confess or telling him what story to give in his confession. If Richardson thought that Saunders' factual pleadings were inaccurate, he could not be expected to rely on them to bring his own suit against the ASA Defendants.

Further, there are material factual disputes concerning whether (a) the ASA Defendants actively misled Richardson by lying in their answers, deposition testimony and discovery responses and (b) even if ASAs did not actively mislead Richardson, Richardson suffered from an "irredeemable lack of information" that was only remedied when he obtained the 302 Report through third party discovery. *Plunkett*, 14 N.E.3d at 681. As Richardson summarizes:

> "Johnson made his admissions to the FBI in March of 2012—several months before this suit was filed. He nevertheless proceeded to make every effort to prevent Richardson from learning about not just his underlying misconduct, but also the fact that he had admitted that misconduct in a formal interview as well. Discovery was stayed against the ASAs and they were not required to Answer the complaints until 2014. But, even then, had Johnson admitted at the outset—for example, in his Answer—that the misconduct had occurred, Richardson would have been in a position to sue him far earlier. The same goes for Valentini who also denied any wrongdoing, sought a stay of discovery against himself, and refused to answer basic interrogatories about his views on the teens." [469-1] at 26.

The ASA Defendants dispute Richardson's characterization of their discovery responses and tactics, but these disputes simply highlight why summary judgment would be premature. For instance, Johnson argues that he did not disclose his FBI interview in his interrogatory responses because he understood Richardson's request to be limited to persons he spoke with after Plaintiff filed his complaint. A jury might believe this explanation, but might also believe that Johnson was "actively misle[ading]" Plaintiff, *Plunkett*, 14 N.E.3d at 681, and "inten[ded] to deceive"

him with "misrepresentations [Johnson] knew to be false," *Putzier*, 50 F. Supp. at 978, or by "hiding evidence," *Shanoff*, 258 F.3d at 702, thereby preventing Plaintiff from amending his complaint before the statute of limitations ran. See also *Singletary v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993) (recognizing that equitable estoppel may apply where defendant has "conceal[ed] evidence from the plaintiff that he needed in order to determine that he had a claim"). And even if a jury believed that the ASA Defendants' actions during discovery were entirely innocent, it could nonetheless conclude that Richardson "could not learn" of the ASA Defendants' participation in the alleged conspiracy before the statute of limitations ran, despite his "exercise of due diligence," such that equitable tolling would apply. *Plunkett*, 14 N.E.3d at 681. For these reasons, the ASA Defendants' motion for summary judgment on Richardson's Section 1983 and state law conspiracy claims is denied.

The Court now turns to the Fifth Amendment and Due Process claims. Other than Johnson's immune testimony, the ASA Defendants point to no evidence that, prior to receiving the 302 Report, Richardson had any direct knowledge that Johnson had anything to do with obtaining his false confession, fabricating false reports or other evidence, or withholding exculpatory or impeachment evidence. Prior to receiving the 302 Report, Richardson *was* aware that *Valentini* knew that Richardson's oral confession may have been false and illegally obtained, as Richardson testified that he told Valentini that the confession was just a story that the police told him to tell. Nonetheless, there is no evidence that Valentini was involved in procuring the false confession, as the record shows that Valentini was not in the room when the police fed Richardson the false story or promised him leniency in exchange for his confession. It also is not clear from the record what role Valentini played—or what Richardson should have known, prior

to receipt of the 302 Report, about the role Valentini played—in prosecuting Richardson using the allegedly false confession, including fabricating any reports or evidence or withholding any exculpatory or impeachment evidence. Whether a reasonable person should have inferred Johnson and Valentini's participation in the violation of Plaintiff's Fifth Amendment and Due Process rights is a question that cannot be decided on summary judgment.[1]

Further, for the same reasons explained above, there are also material factual disputes concerning whether the ASA Defendants actively misled Richardson by providing false pleadings, deposition testimony and discovery answers and, alternatively, whether Richardson suffered from an "irredeemable lack of information" that was only remedied when he obtained the 302 Report. *Plunkett*, 14 N.E.3d at 681; cf. Cf. *Rotella v. Wood*, 528 U.S. 549, 561 (2000) ("where a pattern [of racketeering activity] remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty" in filing suit within the limitations period following discovery of injury). These conclusions also apply to the failure to intervene claim against Johnson. The Court cannot say as a matter of law based on the record before it that, prior to obtaining the 302 Report, Plaintiff knew or should have known that Johnson was aware of the Officer Defendants' violation of his Fifth Amendment and Due Process rights but failed to intervene.

That leaves Richardson's malicious prosecution and IIED claims. The parties do not discuss these claims separately and the Court cannot determine based on the record before it that tolling is unavailable for these claims. In particular, it is not clear from the parties' LR 56.1 statements what roles the ASA Defendants played in prosecuting Richardson, what information,

---

[1] Defendants' contention that Richardson "always knew that he had claims against … Johnson, as [he was] involved in procuring the oral confession that resulted in the criminal conviction," is incorrect, [473] at 13, because—taking Richardson's testimony as true, as we must at this stage—Richardson never met Johnson prior to Johnson providing false testimony at his suppression hearing and had no idea why Johnson lied.

if any, Richardson had or reasonably could have discovered about their roles prior to receiving the 302 Report, and whether that information would have been sufficient to support a malicious prosecution claim. As to the IIED claim, the Court cannot say as a matter of law that, prior to receiving the 302 Report, Richardson had sufficient information to bring an IIED claim against either ASA Defendant. Richardson purports to have known that the ASA Defendants lied in their testimony during the criminal proceedings, but that testimony was protected by absolute immunity. As to both state law claims, there are also material facts in dispute concerning whether the ASA Defendants actively mislead Richardson by providing false pleadings, deposition testimony and discovery responses and, even if the ASA Defendants are blameless, whether there was an irredeemable lack of information despite Richardson's discovery efforts.

## IV. Conclusion

For- the foregoing reasons, the ASA Defendants' and Cook County's motion for summary judgment [446] is granted in part and denied in part. Summary judgment is entered in favor of Valentini on Richardson's Section 1983 failure to intervene claim. Summary judgment is denied as to all other claims against the ASA Defendants and the County. This case is set for status hearing on June 13, 2018 at 9:00 a.m.

Dated: May 29, 2018

_____
Robert M. Dow, Jr.
United States District Judge